IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR. NO. SA-11-CR-00449-DAE |
| | ) | |
| vs. | ) | |
| | ) | |
| MARVIN STEELE, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA</u>

On August 28, 2013, the Court heard Defendant Marvin Steele's
Motion to Withdraw Plea.  (Doc. # 146.)  Assistant United States Attorney Thomas
P. Moore, Esq., appeared at the hearing on behalf of the United States ("the
Government"); Debra L. Parker, Esq., appeared at the hearing on behalf of
Defendant Marvin Steele ("Steele").  After reviewing the Motion and the
Government's response in opposition, and weighing the testimony offered at the
hearing, the Court **DENIES** Defendant's Motion to Withdraw Plea.

<u>BACKGROUND</u>

On June 1, 2011, an Indictment was filed charging Steele with
transportation of stolen goods in violation of 18 U.S.C. § 2314 (Count 1),
interference with interstate commerce by threats of violence in violation of 18
U.S.C. § 1951 (Count 2), and using and carrying a firearm during a crime of

1

violence in violation of 18 U.S.C. § 924(c) (Count 3).  (Doc. # 3.)  Steele and his co-defendant, Johnny Kirk ("Kirk"), allegedly robbed a jewelry store in San Antonio, Texas on March 24, 2010 and then transported the stolen jewelry—worth approximately $2.3 million—to Oklahoma.  Steele was arrested in Oklahoma City, Oklahoma on June 24, 2011 (doc. # 11), and on July 14, 2011 entered a plea of Not Guilty (doc. # 15).

Steele was granted continuances in September and October of 2011 and January of 2012.  On March 23, 2012 Steele filed a Motion to Withdraw Counsel.  (Doc. # 42.)  In the Motion, Steele expressed dissatisfaction with his then-attorney, Clark Adams, and asked the Court to appoint new counsel.  (Id.)  On April 12, 2012, the Court granted Steele's Motion and appointed attorney Scott McCrum ("McCrum") as counsel of record.  (Doc. # 52.)  Steele filed motions to continue in April, June and August of 2012, and February of 2013, all of which were granted.

Jury selection in Steele's trial began on May 20, 2013.  A jury was selected and sworn that morning, and ordered to return the next day for the start of trial.  On the afternoon of May 20, 2013, the Court heard the parties' various motions in limine, and ruled that the Government could present evidence that in 2005, Steele had robbed the very same jewelry store he was accused of robbing in 2010.  The next day, before trial began, Steele asked the Court to remove McCrum

2

from the case, appoint new counsel, and continue the trial.  The Court denied

Steele's requests.  Steele then asked to speak with his attorney before the jury was

brought in.  After conferring with his attorney, Steele advised the Court that he

wished to plead guilty.  Shortly thereafter, he signed a Plea Agreement in which he

pled guilty to Counts 1, 2, and 3 in the Indictment.  (Doc. # 133.)  The Plea

Agreement stated that, if the Court accepted the agreement, it would be bound to

sentence Steele to a term of confinement of 20 years' imprisonment.  By signing

the Plea Agreement, Steele waived his right to appeal or challenge his sentence on

any ground other than ineffective assistance of counsel or prosecutorial

misconduct.

   A plea hearing was held that day—May 21, 2013—before Magistrate

Judge Pamela Mathy.  Judge Mathy discussed the Plea Agreement in detail with

Steele, asking him whether he had read, understood and agreed to each of the

agreement's provisions and advising him that he had a right to plead not guilty and

go to trial.  Judge Mathy also confirmed that the factual basis for the Plea

Agreement was accurate; that Steele had not been threatened or coerced; and that

his decision to plead was made voluntarily and with full understanding of the

consequences.  At the conclusion of the hearing, Judge Mathy found that Steele

was competent to stand trial, that he understood his Constitutional and statutory

rights and desired to waive them, and that his plea was freely, knowingly, and voluntarily made.

That same day, Steele appeared before this Court.  The Court again asked Steele whether he agreed to all the terms of the Plea Agreement and whether anyone had intimidated, coerced, or threatened him into agreeing to plead guilty, and advised Steele that he had the right to a jury trial.  The Court then accepted the guilty plea and set the case for sentencing on August 22, 2013.

On May 31, 2013, Steele filed a Notice of Appeal.  (Doc. # 136.)  On July 26, 2013, Steele filed a Motion to Withdraw Attorney (doc. # 145), and the instant Motion to Withdraw Plea (doc. # 146).  The Court granted Steele's Motion to Withdraw Attorney, allowing McCrum to withdraw and appointing Debra Parker as counsel of record.  (Docs. ## 151, 152.)  In the Motion to Withdraw Plea, Steele asserted that he is innocent and pled guilty only because his attorney, McCrum, gave him "subpar advice"; "completely ignored" all of Steele's requests for evidence; told Steele's private investigator to stop investigating; refused to present key evidence at trial; and told Steele that he "had no chance at trial" and would be put in prison for 35 years to life.  (Doc. # 146.)  Steele stated that he entered into the Plea Agreement under duress, having been threatened with a substantial term of imprisonment by McCrum.  In the motion, Steele also claimed that newly discovered evidence would prove that he was innocent.

4

At the hearing on August 28, 2013, Steele took the stand.  On direct examination, he testified that he did not understand the consequences of his plea, and in particular did not understand that he was giving up his right to a jury trial. According to Steele, he wanted to go to trial, but signed the Plea Agreement because McCrum told him he was facing 35 years to life in prison.  Steele stated that he later learned that was not correct.  Steele testified that he was not given a copy of his Plea Agreement, it was "not really" read to him, and he was too "discombobulated" to read it himself.  He stated that he told Judge Mathy that he wanted to plead guilty because he was so "messed up" when he signed it, he could not believe what was happening.  According to Steele, McCrum was not prepared for trial, did not read the discovery, and did not subpoena Steele's phone records as requested.  Steele stated that phone records and witnesses to the robbery will prove that he is innocent.  Finally, Steele testified that when he filed the Notice of Appeal, he thought that he was filing a motion to withdraw his plea.

On cross-examination, Steele acknowledged that he can read and has seen the Plea Agreement, but reiterated that he did not really read it before signing it because he was so discombobulated.  Steele admitted that he was offered 15 years' imprisonment if he would testify against his co-defendant, Kirk, but he refused the offer because he "can't testify about something he doesn't know about."  Steele acknowledged that, at his insistence, Kirk's name was removed

5

from the factual basis of the Plea Agreement.  He admitted that he has pled guilty a

number of times before—at least twice, by his recollection—and understood what

he was doing on those occasions, but maintained that this time, he did not fully

comprehend what he was doing.  According to Steele, he did not understand Judge

Mathy's questions at the plea hearing, and answered "yes" simply because

McCrum was telling him to.  Similarly, when Steele was asked "[H]ow do you

wish to plead, guilty or not guilty?" and he replied, "Guilty" (Doc. # 156 at 10:3–4,

9–10, 15–16) he did not want to say it, but did so because McCrum told him to.

Steele testified that he "wasn't in his right mind" and did not understand the words

coming out of Judge Mathy or the district judge's mouth because "it was all a

blur."

     McCrum testified for the Government at the hearing on August 28,

2013.  On direct examination, he stated that after he was appointed to represent

Steele, he evaluated the case by obtaining discovery and then visited Steele to

discuss the case.  McCrum advised Steele he did not think they had much of a

chance if they went to trial, and told Steele that if convicted, he was facing 360

months to life in prison.  The Government offered Steele a deal: 15 years'

imprisonment if he testified against Kirk.  Steele refused, and told McCrum he

would never testify against Kirk.  According to McCrum, on the first day of trial,

after the parties' motions in limine were heard, Steele asked him how he felt about

their chances.  McCrum again told Steele that he was not optimistic.  McCrum

testified that he could not remember whether it was he or Steele who first brought

up pleading guilty, but they discussed pleading, and Steele asked McCrum to ask

AUSA Moore if he would consider offering Steele 15 years without testifying

against Kirk.  AUSA Moore said no.  McCrum conveyed that to Steele, and Steele

asked him if the Government would make any deal if he did not testify.  After

some discussion, AUSA Moore offered Steele 20 years.  Steele did not like that

offer; he thought it was too much time.  McCrum told him it was as good an offer

as he was going to get.  A period of back-and-forth exchanges occurred: Steele

would tell McCrum that 20 years was too long, McCrum would prepare to start the

trial, and Steele would insist they talk about it more.  At one point, Steele looked

over at the Government's table and directly asked AUSA Moore if he would just

take 15 years.  AUSA Moore said no.  Ultimately, as the trial was just about to

begin again, Steele said, "Tell them I'll take 20."

McCrum said it still wasn't "smooth sailing" even after Steele agreed

to plead guilty.  As the Plea Agreement was being drawn up, Steele again said he

would not sign it, that it was too much time, and then, again, changed his mind.

McCrum read over the Government's proposed Plea Agreement with Steele, and

Steele insisted that all references to Kirk be removed from the Plea Agreement's

factual basis.  AUSA Moore altered the Plea Agreement in the courtroom, handing

7

revised versions to McCrum to review with Steele.  McCrum denied that he

coerced Steele, or that he was telling Steele "just say yes, just say yes" while Judge

Mathy was taking Steele's plea.  Finally, McCrum testified that the decision to

plead guilty was entirely Steele's choice, and that Steele understood what was

going on.

        During cross-examination, McCrum acknowledged that he and Steele

spoke off the record several times during the plea hearing before Judge Mathy.

McCrum testified that he does not recall what they conferred about, but he believes

their conferences had to do with the fact that Steele was very reluctant throughout

the process.  According to McCrum, Steele's reluctance mainly had to do with the

fact that he thought 20 years was too long.  McCrum testified that he did not think

Steele's reluctance had to do with believing that he was innocent, although

McCrum acknowledged that Steele always maintained that he had not taken part in

the robbery.  McCrum testified that he was given Steele's phone records by the

Government, but also personally subpoenaed them himself, because Steele claimed

that the Government had doctored the records.  McCrum discussed the phone

records with Steele.  McCrum denied telling Steele's investigator to stop

investigating, but admitted that when the investigator was unable to obtain one of

the five phone records McCrum subpoenaed, he told the investigator it was okay to

stop trying, because the record was not important and it was the day before trial.

The phone records McCrum did have were damaging, and corroborated the Government's evidence.

DISCUSSION

"[I]t is well settled that there is no absolute right to withdraw a guilty plea before the imposition of sentence." United States  v. Minor, 714 F.3d 319, 321 (5th Cir. 2013) (quoting United States v. Carr, 740 F.2d 339, 344 (5th Cir. 1984)).  Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw from a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."[1]  Fed. R. Crim. P. 11(d)(2)(B); see also Carr, 740 F.2d at 343 ("The standard for determining whether or not a defendant may withdraw his guilty plea prior to sentencing is whether 'for any

---

[1] Rule 11(d) provides:

    (d)    Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:
        (1)    before the court accepts the plea, for any reason or no reason; or
        (2)    after the court accepts the plea, but before it imposes sentence if:
            (A)    the court rejects a plea agreement under Rule 11(c)(5); or
            (B)    the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Crim. P. 11(d).  Here, the Court accepted Defendant's guilty plea on May 21, 2013 (doc. # 196), so Rule 11(d)(2)(A) is not applicable.  Defendant must therefore show a fair and just reason for withdrawal in accordance with Rule 11(d)(2)(B).

9

reason the granting of the privilege seems fair and just.'") (quoting <u>United States v.</u> <u>Rasmussen</u>, 642 F.2d 165, 167 (5th Cir. 1981)).

When determining whether it would be "fair and just" to allow a defendant to withdraw his guilty plea, courts are directed to consider the following factors: (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court;  (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources.  <u>Carr</u>, 740 F.2d at 343–44.  The <u>Carr</u> factors "are considered for the totality of the circumstances, and the district court is not required to make a finding as to each individual factor."  <u>United States v.</u> <u>McKnight</u>, 570 F.3d 641, 646 (5th Cir. 2009).

Considering the totality of the circumstances, the Court is not persuaded that it would be "fair and just" to allow Steele to withdraw his plea. First, although Steele asserts that he is innocent, he has proffered no evidence to support that assertion, and affirmed before Judge Mathy that the factual basis for the plea was a correct statement of his conduct.  Because "solemn declarations in open court carry a strong presumption of verity," the Court places little weigh on

Steele's claims of innocence.  <u>McKnight</u>, 570 F.3d at 649.  As for the second

factor, the Government would suffer prejudice if Steele's motion were granted.

The Government paid for a number of witnesses to travel from out of state for

Steele's trial in May, and sent them home after Steele decided to plead guilty.  One

of the Government's key witnesses was subsequently ordered by her doctor not to

travel due to declining health.  The fourth and seventh factors do not militate in

favor of allowing Steele to withdraw his plea; withdrawal would inconvenience the

Court and waste its resources.  Because Steele did not decide to plead guilty until

just before trial began, the Court has already spent considerable time selecting a

jury, which it dismissed at Steele's request.

        Moreover, the Court is convinced that Steele's plea was knowing and

voluntary.  The Court did not find Steele's testimony to the contrary at the hearing

to be credible.  Steele is intelligent and articulate and has previously pled guilty on

several occasions.  He certainly understood that he was pleading guilty, and

understood the consequences of doing so.  By his own admission, he participated

in writing the Plea Agreement, insisting that Kirk's name be removed from the

factual basis.    Steele affirmed that he wished to plead guilty before two judges.

He did not express any hesitancy or confusion before this Court when it accepted

his guilty plea, and appeared fully engaged when he affirmed that he wished to

plead guilty.  McCrum testified that Steele was reluctant to plead guilty, but did so

willingly, and denied coercing Steele or telling him to "just say yes."  The Court is also persuaded that Steele had close assistance of counsel available to him. McCrum subpoenaed the evidence Steele asked him to obtain; filed four motions to continue; filed a motion in limine prior to trial; responded to one of the Government's motions in limine; correctly advised Steele regarding the sentence he would receive if he was convicted; and negotiated a favorable Plea Agreement. See McKnight, 570 F.3d at 647 (holding that the defendant had close assistance of counsel where his attorney advised him of the applicable sentencing guidelines, his available options, and his Constitutional and legal rights); United States v. Benavides, 793 F.2d 612, 613, 617–18 (5th Cir. 1986) (holding that the defendant had close assistance of counsel where his attorney filed several motions, including a motion to suppress and several motions for continuance; negotiated a plea agreement; and alerted the defendant and the Court when a conflict arose)

Finally, as for the last factor, it is unclear whether Steele delayed in filing the withdrawal motion.  The Motion to Withdraw Plea was not filed until July 26, 2013, 66 days after the Court accepted Steele's guilty plea.  However, Steele testified that when he filed a Notice of Appeal—only 10 days after pleading guilty—he believed he was moving to withdraw his plea.  Since Steele was not represented by counsel at that time, the Court will assume that he intended to move to withdraw his plea only 10 days after pleading guilty.  Nevertheless, the Court

12

will not grant Steele's Motion on this basis when the other six <u>Carr</u> factors weigh heavily in favor of denying the Motion.

This Court also incorporates its statements at the conclusion of the hearing on this matter, which are part of the official record.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant Marvin Steele's Motion to Withdraw Plea.  (Doc. # 146.)

IT IS SO ORDERED.

DATED:  San Antonio, Texas, September 3, 2013.

_____
David Alan Ezra
Senior United States District Judge

13